2020 IL App (2d) 170437-U
No. 2-17-0437
Order filed March 20, 2020

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT
_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of McHenry County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 15-CF-297 |
| JAMES ZEAS, | ) ) | Honorable Michael W. Feetterer, Sharon L. Prather, |
| Defendant-Appellant. | ) | Judges, Presiding. |

_____

JUSTICE BRENNAN delivered the judgment of the court.
Justices Jorgensen and Schostok concurred in the judgment.

**ORDER**

¶ 1    *Held*:  The trial court did not abuse its discretion by admitting the DVD evidence; the charged images were lewd as contemplated by the child pornography statute (720 ILCS 5/11-20.1(a)(1)(vii) (West 2014)); the penalty imposed for the offense of child pornography does not violate the proportionate penalties clause of the Illinois Constitution when compared to the unauthorized video recording statute (720 ILCS 5/26-4(a) (West 2014)).  We affirm.

¶ 2    In 2009, defendant James Zeas secretly recorded his 15-year old niece, A.S., whose breasts were exposed while she changed her clothes in a public co-ed changing room.  In 2011, defendant's wife, Bozena Kalita, found the recording on defendant's computer, burned a copy, and ultimately it was provided to the police.  Defendant was charged with one count of child pornography (720

ILCS 5/11-20.1(a)(1)(West 2014)) and was found guilty following a bench trial. Defendant contends that: (1) the trial court erred in admitting the DVD into evidence, as it lacked the proper foundation and was premised on unreliable testimony; (2) the surreptitiously recorded video was not lewd within the meaning of the child pornography statute; and (3) his conviction for child pornography violates the proportionate penalties clause of the Illinois Constitution. We affirm.

¶ 3                                                    I. FACTS

¶ 4        When Kalita and defendant were married in April 2009, Kalita's sister and her family, including her niece, A.S., travelled from Poland to visit. They stayed with Kalita and defendant in their home and A.S. turned 15 years' old during the visit. Defendant and the family celebrated her fifteenth birthday together on June 30, 2009.

¶ 5        On April 14, 2011, Kalita told defendant that she would be filing for divorce. The next day, Kalita found some videos on defendant's computer that were taken in a co-ed family changing room at the Algonquin Lifetime Fitness health club where she and defendant were members, and frequently visited. In those videos, she recognized her niece, A.S., her nephew, M.S., her daughter, and defendant. Defendant is seen setting up a recording device prior to the children entering the changing room, where it does not appear they knew the device was placed. In the second of three video clips located on defendant's computer, A.S. is recorded changing her clothes with her naked breasts displayed. Kalita believed defendant had used his cell phone to record the videos, but she had no knowledge which phone he had used to make the recordings. After viewing the videos, she discussed them with defendant on the telephone. Defendant told Kalita that she had failed to understand the videos; it was not what it seemed; and he could lose his license if the videos "came out."

¶ 6    Kalita burned the videos to a DVD and brought the DVD and the computer to her divorce attorney's office in April or May 2011. Two of the three video clips copied to the DVD are at issue in the present case. The first clip depicts defendant hiding a recording device in the co-ed family changing room at Lifetime Fitness. The recorder is hidden on a towel dispenser and pointed at a large countertop mirror. The device then recorded images that were reflected off the mirror. Defendant, A.S., and M.S. appear in the recording. After defendant hides the recorder, A.S. and her brother walk in. Defendant tells the boy to leave and let A.S. use the changing room first. Defendant and his nephew leave A.S. alone in the changing room after which she uses the toilet and changes into her bathing suit. During this entire period, only A.S.'s head is seen, and no nudity is depicted. The first clip ends with defendant in view retrieving the recording device.

¶ 7    The second clip is another recording in the same family changing room, again using the mirror's reflection to capture images. First, defendant is recorded adjusting the camera to focus on the area where the toilet is located. Once satisfied with the angle, defendant secretes the recording device with paper towels and a baseball cap. Defendant exits and moments later his nephew walks into the changing room, changes out of his swimsuit, and leaves. A.S. then enters the changing room wearing her swimsuit. She closes the door, turns and stands in front of the mirror, visible only from the waist up. A.S. then proceeds to take off her bathing suit top, exposing her fully developed breasts. She then puts on clothes and exits the changing room. A.S. never looks at the camera and appears unaware that she is being recorded. Later in the second clip, defendant is viewed removing the recording device.

¶ 8    Kalita and defendant divorced in 2012, although post-decree proceedings continued through 2016. Kalita received the DVD and computer back from her attorney in 2012, and she

kept the computer in the garage of her home. Kalita did not make any other copies of the video clips. In January 2015, Kalita gave the DVD to Camille Goodwin, the guardian *ad litem* for her divorce, who then turned it over to the Algonquin Police Department about five days later. Detective Misty Mariner secured the DVD in the police department's vault after receiving it on January 7, 2015. Mariner, who was a member of Algonquin Lifetime Fitness, also recognized the family changing room and subsequently photographed the room that appeared in the DVD. The photographs and the DVD were admitted at trial.

¶ 9     At the conclusion of defendant's bench trial, the court found defendant guilty of child pornography based upon the second video clip. Specifically, the court found the State had proved that A.S. was under 18 years' old at the time defendant recorded her while aware of her age, and that the display of her breasts on the video clip were lewd such that it constituted child pornography. The court's lewdness determination was premised upon the Illinois Supreme Court's six-factor test for lewdness adopted in *People v. Lamborn*, 185 Ill. 2d 585, 592 (1999), and this court's analysis of the sixth factor in *People v. Sven*, 365 Ill. App. 3d 226 (2006).

¶ 10     After denying defendant's motion for judgment notwithstanding the verdict, and for a new trial, the court sentenced defendant to four years' imprisonment.

¶ 11     Defendant timely appeals.

¶ 12                                   II. ANALYSIS

¶ 13                          A. Admission of Evidence

¶ 14     We first address defendant's argument that the trial court erred in admitting the DVD evidence because the video clip of A.S. lacked proper foundation and was premised on unreliable testimony. Though defendant urges us to apply a *de novo* standard of review regarding the

admissibility of this evidence, we review the trial court's decision to admit the DVD under the abuse of discretion standard pursuant to *People v. Taylor,* 2011 IL 110067, ¶ 27 (admissibility of videotapes entrusted to trial court's discretion). Under this standard, an abuse occurs when the trial court's ruling is fanciful, unreasonable, or when no reasonable person would adopt the trial court's view. *Id.*

¶ 15    Videotapes may be admitted if properly authenticated. *People ex rel. Sherman v. Cryns*, 203 Ill. 2d 264, 284 (2003). A proper foundation may be laid "by someone having personal knowledge of the filmed object, [who can testify] that the film is an accurate portrayal of what it purports to show." *Cryns*, 203 Ill. 2d at 283-84. Additionally, as here, video evidence may be admitted under the "silent witness" theory, wherein "a witness need not testify to the accuracy of the image depicted in the photographic or videotape evidence if the accuracy of the process that produced the evidence is established with an adequate foundation." *Taylor*, 2011 IL 110067, ¶ 32.

¶ 16    The supreme court in *Taylor* adopted a six-factor test for establishing the reliability of the process that produces a videotape, though it emphasized that the list was "nonexclusive," and that each case must be evaluated on its own. *Id.* ¶ 35. The six factors are: (1) the device's capability for recording and general reliability; (2) the competency of the operator; (3) the proper operation of the device; (4) showing the manner in which the recording was preserved (chain of custody); (5) the identification of the persons, locale, or objects depicted, and (6) an explanation of any copying or duplication process. *Id.* "[D]epending on the facts of the case, some of the factors may not be relevant or additional factors may need to be considered. The dispositive issue in every case is the accuracy and reliability of the process that produced the recording." *Id.*

¶ 17    Kalita testified that she believed defendant had used his cell phone to record A.S., although she had no knowledge which cell phone he had used to make the recording. She also testified that it was clear defendant made the recording, as he is seen setting up and removing the recording device in each of the video clips. After viewing the videos, Kalita positively identified the victim, A.S., as the child in the recording. She knew the video was recorded in the Algonquin Lifetime Fitness changing room because she was a member and frequently visited the facility. Detective Mariner took photographs of the Lifetime Fitness changing room that were admitted corroborating where the recordings were produced.

¶ 18    Thus, the device used to record the videos was clearly operational at the time and was able to record sufficiently so that the individuals in the video clips were identifiable, as was the location. Such evidence is sufficient to adequately demonstrate the first *Taylor* factor that the camera was able to record and was generally operating properly. See *Taylor*, 2011 IL 110067, ¶ 39. (that the tape exists at all is evidence that the tape recorder was functional, and the operator knew how to operate it). Kalita's identification of her niece and the location and timeframe wherein the videos were taken satisfies the fifth *Taylor* factor (identification of the persons and locale depicted). Additionally, the clarity of the video speaks to the competency of the operator and the proper operation of the device (*Taylor* factors 2 and 3).

¶ 19    Regarding *Taylor* factor 4, *i.e.*, chain of custody, Kalita testified that after she discovered the video clips on defendant's computer in April 2011, she burned a copy of the video clips to a DVD. Kalita subsequently gave the computer and the DVD to her attorney in April or May 2011, who returned them to her in 2012. After the DVD and the computer were returned to her, Kalita did not make any other copies. She stored defendant's computer in the garage of her home,

although the computer was missing at the time of trial.  She later brought the DVD to the guardian *ad litem* in their divorce case, who turned it over to the Algonquin police.  These witnesses testified to the manner in which the video clips were discovered and burned to the DVD, and to the chain of custody for the DVD and how it was preserved.  This evidence satisfies the fourth *Taylor* factor concerning chain of custody issues.  *Taylor*, 2011 IL 110067, ¶ 35.

¶ 20    Regarding *Taylor* factor six, an explanation of the copying or duplication process, Kalita testified that the video clips in question were a fair copy of what she had discovered on defendant's computer.  When the State moved to admit the DVD into evidence, defendant objected, arguing that, "[Kalita] only said she believes it's the same, not that it is the same.  That's a little short of establishing a true and accurate foundation that this truly and accurately is the DVD."  The court overruled the objection, and defendant did not present any other objections or attack the foundation of the DVD under the sixth *Taylor* factor that an "explanation of any copying or duplication process" was otherwise inadequate or lacked a foundation.  *Id.* ¶ 35.

¶ 21    We note further that during Kalita's direct testimony on this issue, defendant objected to "what's in the video and [Kalita's] conclusion at this point."  The objection was sustained as to Kalita's conclusions only.  Defendant then objected to what he believed was Kalita "talking about several different videos and trying to bring into evidence everything that might be on the computer which hasn't even been presented to us.  If it's strictly limited to that one video that she intends to present to the Court, then my objection was frankly ill-founded."  The court asked defendant if he was withdrawing his objection and defendant responded, "[o]nly as to that video, yes."  The State clarified that the DVD contained three video clips that the State would introduce but would only ask about two of them, pointing out that the first of the two clips was being offered to show

defendant's knowledge and intent to record, and that the second clip contained the footage that was the basis for the pornography charge. The State contends that the above colloquy was insufficient to preserve defendant's DVD admissibility issue. See *People v. Denson*, 2014 IL 116231, ¶ 11. Regardless of waiver, we find that the trial court did not abuse its discretion in admitting the DVD into evidence. Considering the *Taylor* factors, there is no question that the admitted video clips were reliable.

¶ 22   On appeal, defendant further argues that the court erred in admitting the DVD because it failed to consider, *inter alia*, uncertainty as to the device used to make the recordings, the competence of the operator, and the manner in which the recordings were preserved and safeguarded. In support, defendant points to the parties' stipulation from Apple stating that no iPhone had the capability to record videos in 2009; Kalita's bias against him because they were "embroiled" in a contentious divorce when the videos "came to light"; the computer disappearing; and the possibility of tampering given Kalita's "significant computer and technological expertise." While the trial court heard testimony regarding all of the above, it nevertheless concluded that the evidence in support of the *Taylor* factors and other related testimony regarding the video clips were sufficient foundation for admission of the DVD. Certainly, it cannot be said that this determination was an abuse of discretion.

¶ 23   Defendant also cites to the spoliation doctrine based on Kalita's failure to take reasonable measures to preserve the computer from which she burned the DVD. Defendant forfeits this argument, however, as it was not raised in a posttrial motion. *People v. De la Hera*, 2011 IL App (3d) 100301, ¶ 3.

¶ 24                                      B. Finding the Image Lewd

¶ 25    We next address whether the charged images were lewd as contemplated by the child pornography statute. 720 ILCS 5/11-20.1(a)(1)(vii) (West 2014). The standard of review for the trial court's determination in this regard is *de novo*. *Lamborn*, 185 Ill. 2d at 591.

¶ 26    Child pornography is defined by section 11-20.1 of the Criminal Code, which provides in relevant part:

> "(a) A person commits the offense of child pornography who:
>
> (1) films, videotapes, photographs or otherwise depicts or portrays by means of any similar visual medium or reproduction *** any child whom he or she knows or reasonably should know, to be under the age of 18 ***:
>
> * * *
>
> (vii) depicted or portrayed in any pose, posture or setting involving a lewd exhibition of the unclothed genitals, pubic area, buttocks, or, if such person is female, a fully or partially developed breast of the child." 720 ILCS 5/11-20.1(a)(1)(vii) (West 2014).

¶ 27    Our supreme court has held the following factors relevant for determining whether a depiction is lewd for purposes of the pornography statute: "(1) whether the focal point of the visual depiction is on the child's genitals; (2) whether the setting of the visual depiction is sexually suggestive, *i.e.*, in a place or pose generally associated with sexual activity; (3) whether the child is depicted in an unnatural pose, or in inappropriate attire, considering the age of the child; (4) whether the child is fully or partially clothed, or nude; (5) whether the visual depiction suggests sexual coyness or a willingness to engage in sexual activity; and (6) whether the visual depiction is intended or designed to elicit a sexual response in the viewer." *Lamborn*, 185 Ill. 2d at 592

(adopting the factors employed in *United States v. Dost*, 636 F. Supp. 828, 832 (S.D. Cal. 1986), for determining the definition of lascivious under the federal pornography statute). Not all these factors need be present for an image to be deemed lewd. *Lamborn*, 185 Ill. 2d at 592. The image must be judged in light of its overall content, while considering the age of the minor. Because the overall content is pertinent, those factors are not all inclusive. *Id*. at 592-93.

¶ 28    Though defendant complains that the trial court improperly cited the invasion of A.S.'s privacy as another reason to convict, we do not address this contention because our review is *de novo.* Under the *de novo* standard of review, the reviewing court does not defer to the trial court's judgment or reasoning but performs the same analysis that a trial judge would perform. *People v. Tyler*, 2015 IL App (1st) 123470, ¶ 151. Thus, this court reviews the photographs themselves and determines whether those images are lewd under the child pornography statute. *Lamborn*, 185 Ill. 2d at 590. As we emphasized in *Sven*, 365 Ill. App. 3d at 231, "[o]ur inquiry, then, is clearly limited only to the content of the videotape itself," and we assess the content of the images rather than the conduct of defendant.

¶ 29    Applying the *Dost* factors adopted in *Lamborn* to the second video clip, we note the following regarding the first five factors: (1) defendant adjusted the camera to ensure that it focused on A.S.'s breast area, which weighs in favor of a lewdness finding; (2) the changing room setting of the visual depiction is not typically associated with sexual activity, which weighs against a lewdness finding; (3) A.S. is not depicted in an unnatural pose or in inappropriate attire, which weighs against a lewdness finding; (4) A.S.'s breasts are exposed, which weighs in favor of a lewdness finding; and (5) the visual depiction does not suggest sexual coyness or a willingness to engage in sexual activity, which weighs against a lewdness finding. Taken together, these factors

are a mixed bag and might not, standing alone, justify a finding of lewdness as contemplated in the child pornography statute. For while nudity is a factor to consider, simple nudity in itself is insufficient to render an image lewd. *Sven*, 365 Ill. App. 3d at 230. See also *Lamborn*, 185 Ill. 2d at 594 ("[n]udity without lewdness is not child pornography"). Indeed, our legislature proscribed the "lewd exhibition of the unclothed genital." 720 ILCS 5/11-20.1 (a)(1)(vii) (West 2014). Equating nudity with lewdness would render the term "unclothed" meaningless, which contravenes a basic principle of statutory construction. *People v. Maggette*, 195 Ill. 2d 336, 350 (2001) ("a court should construe a statute, if possible, so that no term is rendered superfluous or meaningless").

¶ 30    This, of course, leads us to consideration of the sixth *Dost* factor adopted in *Lamborn*: whether the visual depiction is intended or designed to elicit a sexual response in the viewer. *Lamborn*, 185 Ill. 2d at 592-93 (1999). And particularly instructive is this court's consideration of the sixth *Dost* factor in *People v. Sven*, 365 Ill. App. 3d 226 (2006), which also involved the surreptitious recording of a child, similar to what occurred in this case. *Sven*, 365 Ill. App. 3d at 228.

¶ 31    The *Sven* defendant placed hidden video cameras in his bathroom and then instructed the minor babysitter to give his infant daughter a bath. *Sven*, 365 Ill. App. 3d at 228. He asked her to get into the tub with his daughter, ostensibly for safety reasons. *Id.* The surreptitiously recorded video showed the babysitter undressing in the bathroom and, throughout much of the video, she was nude. *Id.* This court concluded that the *Sven* images were indeed lewd. *Id.*

¶ 32    In determining what the sixth *Dost* factor meant by a visual depiction "intended or designed to elicit a sexual response in the viewer," we acknowledged then and concede now that this factor

has proven difficult to apply, with some courts focusing on the content alone, other courts focusing on the intent of the pornographer, and yet other courts virtually abandoning the factor. *Id*. at 234; see also, *U.S. v. Steen*, 634 F. 3d 822, 828-29 (5th Dist. 2011) (Higginbotham J., concurring) (discussing "misgivings" about the sixth factor); A Call to Rewrite America's Child Pornography Test: The *Dost* Factor Test, 24 Seton Hall J. Sports & Ent. L. 151, 165 (2014). While we acknowledge the continued criticism of this factor in some courts across the country, we must adhere to our supreme court's adoption of this factor in *Lamborn* and continue to employ it. See *People v. Artis*, 232 Ill. 2d 156, 164 (2009) ("The appellate court lacks authority to overrule decisions of [the supreme court], which are binding on all lower courts").

¶ 33    We specifically noted two problematic questions that arise in determining what is meant by "intended or designed to elicit a sexual response in the viewer": the first, "intended or designed by whom?"; the second, "who is the viewer?" *Sven*, 365 Ill. App. 3d at 234. "The first question seems to require an inquiry into a defendant's state of mind, and the second appears to focus upon the reactions of viewers of the image." *Id*. We concluded that, as to the first question, the image must be judged on its own terms, as a defendant's subjective intentions are irrelevant; as to the second question, the viewer must be an "objective viewer." *Lamborn*, 185 Ill. 2d at 594-95.

¶ 34    In applying a plausible meaning to "objective viewer," we determined the inquiry should be "whether the images invite the viewer to see the activity on the tape from some sexualized or deviant point of view." *Sven*, 365 Ill. App. 3d at 239. Framed as such, we concluded that the images on the *Sven* tape invited the viewer to see the activity from a sexualized or deviant point of view because it placed the viewer in the role of voyeur, i.e., "the viewer stands in relation to the victim as would a peeping tom." *Id*. Voyeurism is sexually motivated conduct and is recognized

as deviant behavior. *Id.* That the viewer was placed in the point of view of a voyeur and that the images were candid contributed to their lewdness. And because the victim did not react, the image created a sense of covert observation that would not exist otherwise. *Id.*

¶ 35 Apart from asking us to depart from our supreme court's adoption of the *Dost* factors in *Lamborn,* which we cannot do, defendant additionally urges us to reconsider our analysis of the sixth *Dost* factor in *Sven.* And though we are of course at liberty to revisit our analysis in *Sven,* we discern no compelling reason to do so because we continue to find it sound. Indeed, we note that our analysis in *Sven* has recently been adopted by the First District Appellate Court. See *People v. Syckle,* 2019 IL App (1st) 181410, ¶ 25.

¶ 36 Applying the analysis of the sixth *Dost* factor we adopted in *Sven*, defendant's instant recording clearly places the viewer in the perspective of a voyeur. Indeed, we agree with the trial court that, because the victim is not reacting to the camera, "the image creates a sense of covert observation that would otherwise not exist." The victim's candid behavior in undressing and dressing, and her naked breasts revealed in such a way that the viewer's eyes are drawn to them, places the viewer in the position of a peeping Tom. This sixth factor, then, weighs in favor of a lewdness finding, and when considered in conjunction with our assessment of the other factors discussed *supra,* leads us to the conclusion that the video in question was lewd and violated our pornography statute beyond a reasonable doubt.

¶ 37 Nor are we persuaded that our analysis renders the statute unconstitutionally vague because we improperly disregarded the statute's requirement that either the "pose, posture or setting" be lewd. Defendant asserts that by not requiring the pose, posture, or setting be lewd, a person of ordinary intelligence cannot distinguish lawful from unlawful conduct because any minor's nudity,

no matter how innocuous or inadvertent, can then be interpreted to fall under the pornography statute in violation of the First and Fourteenth Amendments. Initially, we note that the word "lewd" in our pornography statute does not modify the words "pose, posture or setting," but rather the word "exhibition." Specifically, it proscribes minors being "depicted or portrayed in any pose, posture or setting *involving a lewd exhibition* of the unclothed genitals *** or partially developed breast of the child." (Emphasis added.) 720 ILCS 5/11-20.1(a)(1)(vii) (West 2014). The point of adopting the *Dost* factors, and of our analysis in *Sven,* is the need for a workable definition of "lewd," not to ignore the plain meaning of "pose, posture or setting" in the statute. Indeed, the adoption of the *Dost* factors ensures that courts do not run afoul of the First and Fourteenth Amendments in finding pornography under the statute. *Lamborn,* 185 Ill. 2d at 592.

¶ 38 Considering the totality of the tape*,* our *de novo* review leads us to conclude that the video clip is lewd and violative of our pornography statute. 720 ILCS 5/11-20.1(a)(1)(vii) (West 2014). For the same reasons, we find the evidence was sufficient to support defendant's conviction beyond a reasonable doubt.

¶ 39 C. Proportionate Penalties Clause

¶ 40 Defendant argues that the penalty imposed for the offense of child pornography (720 ILCS 5/11-20.1(a)(1)(vii) (West 2014)) violates the proportionate penalties clause of the Illinois Constitution (Ill. Const. 1970, art. 1, § 11) when compared to the penalty imposed for the offense of unauthorized video recording (720 ILCS 5/26-4(a) (West 2014)). In that the offenses have different elements, however, defendant's proportionate penalties argument fails.

¶ 41 The unauthorized video recording statute requires proof that a video recording was made of another person, without the person's consent, and that the recording was made in a place

enumerated by the statute. 720 ILCS 5/26-4(a) (West 2014). Child pornography does not require surreptitious recording at specific locations, but does require additional elements, including that the person captured in the image be a minor and that the image contain the lewd exhibition or disclosure of specific body parts. 720 ILCS 5/11-20.1(a)(1)(vii) (West 2014).

¶ 42    Defendant's instant approach to his proportionate penalties challenge, using a cross-comparison analysis, has been declared invalid by the supreme court in *People v. Sharpe*, 216 Ill. 2d 481, 517, 519 (2005) ("judging penalties by a comparison with penalties for offenses with different elements should never have been part of our proportionate penalties jurisprudence). *Id.* at 517. Because defendant's proportionate penalties challenge is based solely on the cross-comparison analysis, his argument lacks merit.

¶ 43                    III. CONCLUSION

¶ 44    For the preceding reasons, we affirm defendant's conviction of child pornography.[1]

¶ 45    Affirmed.

---

[1] **In disposing of defendant's appeal, we deny his motions taken with the case. We deny defendant's request that certain protected health information and specified exhibits be struck from the record because the details of defendant's health as well as the complained-of exhibits remain undisclosed as they are part of the secured record on appeal and inaccessible without a court order. See Illinois Supreme Court, Standards and Requirements for Electronic Filing the Record on Appeal, ¶ 1(k) (rev. Jan. 2018). We also deny defendant's request to correct the prosecutor's statements in arguing against an appeal bond on mootness grounds.**